# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF WEST VIRGINIA

UNITED STATES OF AMERICA,

          v.                                     Criminal Action No. 2:13CR23

CHRISTOPHER MICHAEL FISCHER,
      Defendant.

## ORDER/OPINION REGARDING PLEA OF GUILTY

This matter has been referred to the undersigned Magistrate Judge by the District Court for purposes of conducting proceedings pursuant to Federal Rule of Criminal Procedure 11. Defendant, Christopher Michael Fischer, in person and by counsel, Harry A. Smith, appeared before me on September 10, 2013. The Government appeared by Stephen Warner, its Assistant United States Attorney.

The Court determined that Defendant was prepared to enter a plea of "Guilty" to Count Five of the Indictment. Thereupon, the Court proceeded with the Rule 11 proceeding by first placing Defendant under oath. The Court then determined that Defendant's plea was pursuant to a written plea agreement, and asked the Government to tender the original to the Court. The Court then asked counsel for the Government to summarize the written Plea Agreement. Defendant then stated that the agreement as summarized by counsel for the Government was correct and complied with his understanding of the agreement. Both counsel stated that the plea agreement was the only offer made to the defendant. The Court **ORDERED** the written Plea Agreement filed.

Counsel for Defendant offered that there was an oral agreement between counsel that if Defendant were compliant with the conditions of his release, at sentencing by the District Court the United States would not oppose a motion allowing him to self-report for imprisonment and that he be designated to a facility close to home. The United States agreed it would not oppose any such motion. The Court explained to Defendant that even if counsel made the motion and the United

States agreed, the Bureau of Prisons does not have to go along with the agreement to designate him to a facility close to home. Defendant understood and stated he still wanted to plead guilty.

The Court next inquired of Defendant concerning his understanding of his right to have an Article III Judge hear the entry of his guilty plea and his understanding of the difference between an Article III Judge and a Magistrate Judge. Defendant thereafter stated in open court that he voluntarily waived his right to have an Article III Judge hear and accept his plea and voluntarily consented to the undersigned Magistrate Judge hearing and accepting his plea, and tendered to the Court a written Waiver of Article III Judge and Consent To Enter Guilty Plea Before Magistrate Judge, which waiver and consent was signed by Defendant and countersigned by Defendant's counsel and was concurred in by the signature of the Assistant United States Attorney appearing.

Upon consideration of the sworn testimony of Defendant, as well as the representations of his counsel and the representations of the Government, the Court finds that the oral and written waiver of Article III Judge and consent to enter guilty plea before a Magistrate Judge was freely and voluntarily given and the written waiver and consent was freely and voluntarily executed by Defendant, Christopher Michael Fischer, only after having had his rights fully explained to him and having a full understanding of those rights through consultation with his counsel, as well as through questioning by the Court. The Court **ORDERED** the written Waiver and Consent to Enter Guilty Plea before a Magistrate Judge filed and made part of the record.

The undersigned then reviewed with Defendant Count Five of the Indictment and the elements the government would have to prove, charging him with possession of pseudoephedrine to be used in the manufacture of methamphetamine, in violation of Title 21, U.S.C. Section 841(c)(2).

The undersigned then reviewed with Defendant the statutory penalties applicable to an individual adjudicated guilty of the felony charge contained in Count Five of the Indictment, the

impact of the sentencing guidelines on sentencing in general, and inquired of Defendant as to his competency to proceed with the plea hearing. From said review the undersigned Magistrate Judge determined Defendant understood the nature of the charge pending against him and understood the possible statutory maximum sentence which could be imposed upon his conviction or adjudication of guilty on that charge was imprisonment for a term of not more than twenty (20) years; understood that a fine of not more than $250,000.00 could be imposed; understood that both fine and imprisonment could be imposed; understood he would be subject to a period of up to three (3) years of supervised release; and understood the Court would impose a special mandatory assessment of $100.00 for the felony conviction payable on or before the date of sentencing. He also understood that his sentence could be increased if he had a prior firearm offense, violent felony conviction, or prior drug conviction. He also understood he might be required by the Court to pay the costs of his incarceration and supervised release.

The undersigned also reviewed with Defendant his conditional waiver of appellate rights as follows:

Ct: Did you and Mr. Smith discuss and do you understand from that discussion that you have a right to appeal your conviction and any sentence to the Fourth Circuit Court of Appeals, providing you file a notice of appeal within 14 days of sentencing?

Def: Yes, your Honor.

Ct: Did you and Mr. Smith discuss and did you understand from that discussion that you may collaterally attack or challenge that sentence and how that sentence is being carried out, by filing a motion under 28 USC Section 2255?

Def: Yes, your Honor.

3

Ct:     Did you understand that if the District Judge imposes an actual sentence on you that is equal to or the same as a Guideline sentence with a total adjusted guideline level of 23 or lower, then you give up your right to appeal your sentence to the Fourth Circuit, and you give up your right to collaterally attack or challenge that sentence using a habeas corpus-type motion?

Def:    Yes, your Honor.

Ct:     Did you intend to give up those two valuable rights under that condition as outlined in paragraphs 14 and 15 of your written plea agreement?

Def:    Yes, your Honor.

From the foregoing colloquy the undersigned determined that Defendant understood his appellate rights and knowingly gave up those rights pursuant to the condition contained in the written plea bargain agreement.

The undersigned Magistrate Judge further examined Defendant relative to his knowledgeable and voluntary execution of the written plea bargain agreement signed by him on August 20, 2013, and determined the entry into said written plea bargain agreement was both knowledgeable and voluntary on the part of Defendant. The undersigned then inquired of Defendant regarding his understanding of the written plea agreement. Defendant stated he understood the terms of the written plea agreement and also stated that it contained the whole of his agreement with the Government and no promises or representations were made to him by the Government other than those terms contained in the written plea agreement and those terms already addressed above regarding self-reporting and designation. Upon inquiry, Defendant also stated that no one, including his counsel had promised him any particular sentence.

The undersigned Magistrate Judge further inquired of Defendant, his counsel, and the Government as to the non-binding recommendations and stipulation contained in the written plea

4

bargain agreement and determined that Defendant understood, with respect to the plea bargain agreement and to Defendant's entry of a plea of guilty to the felony charge contained in Count Five of the Indictment, the undersigned Magistrate Judge would write the subject Order and would further order a pre-sentence investigation report be prepared by the probation officer attending the District Court. The undersigned advised the Defendant that the District Judge would adjudicate the Defendant guilty of the felony charged under Count Five of the Indictment. Only after the District Court had an opportunity to review the pre-sentence investigation report, would the District Court make a determination as to whether to accept or reject any recommendation or stipulation contained within the plea agreement or pre-sentence report. The undersigned reiterated to the Defendant that the District Judge may not agree with the recommendations or stipulation contained in the written agreement. The undersigned Magistrate Judge further advised Defendant, in accord with Federal Rule of Criminal Procedure 11, that in the event the District Court Judge refused to follow the non-binding recommendations or stipulation contained in the written plea agreement and/or sentenced him to a sentence which was different from that which he expected, he would not be permitted to withdraw his guilty plea. The Court also advised Defendant regarding the United States' agreement to recommend that the Court's sentencing Order include a recommendation that Defendant participate in the Bureau of Prisons RDAP. The Court advised that even if the United States did make that recommendation, the Court was not bound to follow it, and that even if the Court did make that recommendation the Bureau of Prisons was not bound to follow that recommendation. Defendant and his counsel each acknowledged their understanding and Defendant maintained his desire to have his plea of guilty accepted.

Defendant also understood that his actual sentence could not be calculated until after a pre-sentence report was prepared and a sentencing hearing conducted. The undersigned also advised,

and Defendant stated that he understood, that the Sentencing Guidelines are no longer mandatory, and that, even if the District Judge did not follow the Sentencing Guidelines or sentenced him to a higher sentence than he expected, he would not have a right to withdraw his guilty plea. Defendant further understood there was no parole in the federal system, although he may be able to earn institutional good time, and that good time was not controlled by the Court, but by the Federal Bureau of Prisons.

Defendant also understood that while his counsel could use the chart to help him understand how the guidelines are used, he cannot take that as a promise or guarantee that the District Judge would see it the same way and impose a sentence consistent with what he had been told by counsel.

Thereupon, Defendant, Christopher Michael Fischer, with the consent of his counsel, Harry A. Smith, proceeded to enter a verbal plea of **GUILTY** to the felony charge contained in Count Five of the Indictment.

The Court heard the testimony of Cpl. Sneathen, who is employed by the Moorefield, West Virginia police department, who testified he saw Defendant on November 12, 2012, during a traffic stop in Moorefield, Hardy County, WV. Defendant was in the car, which was being driven by co-defendant Roger See. Cpl Sneathen searched the car, finding two boxes of pseudoephedrine. Defendant made a statement, admitting he had been buying boxed of Claritin D for different people since August 2012. See would find a store and would give Defendant $25.00 to purchase the pseudoephedrine. Defendant would buy whatever he found that had "D" in it (Decongestant). He stated he knew the pseudoephedrine he purchased was being used by someone else to make meth. He admitted he smoked meth. The last time he smoked meth had been a week earlier. See had the meth. See also made a statement that Defendant bought pseudoephedrine for him before–about five times. He used it to make meth using the "shake and bake" method. Officers went to a park where they were informed the meth was made. State Police BCI Officer Tom Kessel, who is certified in clandestine

6

labs, found a place down by the river in the park that contained clandestine lab evidence. The officers found an open ice compress pack, open batteries, an open cold pain relief package, and a clear plastic bottle containing a white substance.

Cpl. Sneathen also testified that a search of NPLEX records showed Defendant had purchased pseudoephedrine on August 27, September 2, October 2, October 22, October 24, and November 4, 2012. He was blocked from purchasing pseudoephedrine on November 23, 2012.

Cpl. Snethen testified that Defendant's own statement along with the statements of others, and his purchases of pseudoephedrine show a knowledge or at least reasonable cause to know the pseudoephedrine would be used to make meth.

Defendant stated he heard, understood, and agreed with Cpl. Sneathen's testimony ,except he did not agree with his co-defendant Roger See's statement as testified to by Cpl. Sneathen, that Defendant was cooking meth. He did know that the purpose of the Claritin D he purchased was for someone else to make meth. The undersigned and counsel agreed that even if See's statement regarding Defendant making meth was false, the testimony of Cpl. Sneathen provides a factual basis for the guilty plea independent of the plea itself.

Upon consideration of all of the above, the undersigned Magistrate Judge finds that Defendant is fully competent and capable of entering an informed plea; Defendant is aware of and understood his right to have an Article III Judge hear and accept his plea and elected to voluntarily consent to the undersigned United States Magistrate Judge hearing and accepting his plea; Defendant understood the charges against him, not only as to the Indictment as a whole, but in particular as to Count Five of the Indictment; Defendant understood the consequences of his plea of guilty, in particular the maximum statutory penalty to which he would be exposed; Defendant made a knowing and voluntary plea of guilty to Count Five of the Indictment; and Defendant's plea is independently

supported by the testimony of Cpl. Sneathen, which provides, beyond a reasonable doubt, proof of each of the essential elements of the charge to which Defendant has pled guilty.

The undersigned Magistrate Judge therefore **ACCEPTS** Defendant's plea of guilty to the felony charge contained Count Five of the Indictment and recommends he be adjudged guilty on said charge as contained in Count Five of the Indictment and have sentence imposed accordingly.

The undersigned further directs that a pre-sentence investigation report be prepared by the adult probation officer assigned to this case.

Defendant is continued on release under the Conditions of Pretrial Release previously entered by the Court.

The Clerk of the Court is directed to send a copy of this Order to counsel of record.

It is so **ORDERED.**

DATED: September 10, 2013.

*John S. Kaull*
JOHN S. KAULL
UNITED STATES MAGISTRATE JUDGE